2024 IL App (2d) 230521-U
No. 2-23-0521
Order filed February 8, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 23-CF-1050 |
| DERRICK WELLS, | ) ) ) | Honorable Victoria Rossetti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE MULLEN delivered the judgment of the court.
Justices Hutchinson and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) The failure to hold an immediate hearing on the State's petition to detain did not require reversal of detention order where defendant filed a motion for pretrial release and the proceedings on defendant's motion would have been meaningfully the same regardless of whether the State had filed its petition; (2) the trial court's finding that the proof is evident or the presumption great that defendant committed the charged offense was not against the manifest weight of the evidence; (3) the trial court's finding that the State proved that defendant was a threat to any individual or the community was not against the manifest weight of the evidence; but (4) the trial court's failure to include oral or written findings indicating whether any condition or combination of conditions of pretrial release could mitigate the threat posed by defendant required remand.

¶ 2    Defendant, Derrick Wells, appeals the November 20, 2023, order of the circuit court of Lake County denying pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), commonly known as the Pretrial Fairness Act (Act). See Pub. Acts. 101-652, § 10-255 (eff. Jan. 1, 2023) and 102-1104, § 70 (eff. Jan. 1, 2023); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date of Act as September 18, 2023).[1] Defendant argues that the State failed to meet its burden of proving that (1) the proof is evident or the presumption great that he committed the charged offenses, (2) he was a threat to any individual or the community, and (3) no condition or combination of conditions could mitigate the real and present threat to the safety of any person or persons or the community. Defendant also argues that the failure to hold an "immediate" hearing on the State's petition to detain "weighs in favor of reversal." For the reasons set forth below, we vacate the trial court's detention order and remand with directions.

¶ 3                                    I. BACKGROUND

¶ 4    On May 29, 2023, defendant was arrested for and charged by complaint with various offenses, including first degree murder. Defendant's bond was set at $5 million (10% to apply). Defendant was unable to post bond, so he remained incarcerated. On June 28, 2023, a Lake County grand jury returned a superseding indictment charging defendant with three counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2022)).

---

[1]The Act has also been referred to as the Safety, Accountability, Fairness, and Equity-Today (SAFE-T) Act. However, neither the titles "Pretrial Fairness Act" nor "SAFE-T Act" is official, as neither appears in the Illinois Compiled Statutes or the public acts. *Rowe*, 2023 IL 129248, ¶ 4 n.1.

¶ 5    A pretrial services "Public Safety Assessment Report" (Report) was completed on May 31, 2023. The Report indicated that defendant was 32 years of age and scored a three on the "failure to appear" scale and a three on the "new criminal activity" scale.[2] The Report also reflected that defendant had a prior failure to appear, although it was older than two years. The Report noted that defendant had prior misdemeanor and felony convictions, which included convictions of criminal trespass to land (2013), possession of cannabis (2013), and aggravated battery of a peace officer (2022). The Report further indicated that, on February 15, 2022, defendant pleaded guilty to the charge of aggravated battery of a peace officer and was sentenced in Cook County to 24 months' probation, which probation was being monitored by Lake County.

¶ 6    On September 15, 2023, the State filed a "Verified Petition to Detain" (Petition) pursuant to section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)). The State requested the court to order the detention of defendant pending trial. In the Petition, the State noted the offenses for which defendant was arrested and asserted that "[i]n light of the specific facts of this case and/or *** [d]efendant's criminal history, this offense qualifies as one for which a Court can order detention awaiting trial." The State further asserted that "[t]he proof is evident, or the presumption great, that *** [d]efendant committed the [described] offense." In paragraph three of the Petition, the State alleged as follows:

"[T]he Defendant's pre-trial release would pose a real and present threat to the safety of a person, persons or the community for the following specific reason: Defendant is charged with [f]irst [d]egree [m]urder following an incident that occurred on May 29, 2023 in

---

[2]The Report does not indicate the scoring range of either the "failure to appear" or "new criminal activity" scales.

Waukegan, Lake County, Illinois. Defendant *** had been in the parking lot of the Bowlero at a bar-b-que party when a fight broke out. Defendant *** provided a loaded firearm to [c]o-[d]efendant [Josiah] Mars who then shot the victim twice in the chest area. The victim ultimately succumbed to the gunshot wounds, dying at a local area hospital. These actions provide a threat to the public and community as the offense occurred in a public parking lot with numerous individuals present, involved a firearm, and resulted in the death of another."

The State further alleged that, absent pretrial detention, there is a high likelihood of willful flight to avoid prosecution as set forth in section 110-6.1(a)(8) of the Code (725 ILCS 5/110-6.1(a)(8) (West 2022)) because "[d]efendant's forcible felony charge resulted in the death of another and carry [*sic*] the possibility of natural life in prison, providing an incentive of willful flight to avoid prosecution." Finally, the State asserted that there is "no set of conditions which mitigate or alleviate the risk(s) set forth in paragraph 3" because "[a]s effective as pre-trial monitoring may be in many cases, there is not [*sic*] technology that can confine *** [d]efendant to his home with certainty nor can Pre-Trial Bond Services Division engage in effective 24-hour surveillance of *** [d]efendant's residence." No action was taken on the State's Petition, and defendant, still not having posted bond, remained incarcerated.

¶ 7 Meanwhile, on October 30, 2023, defendant filed a "Motion for Pretrial Release" (Motion). In the Motion, defendant acknowledged that an individual charged with a forcible felony may be detained pending trial if he or she poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case. See 725 ILCS 5/110-6.1(a)(1.5) (West 2022). Defendant alleged, however, that "there is and will be no evidence that [he] poses a real and present threat to any person" because he is blind and needs assistance in the

activities of daily living. Defendant also denied that he is a flight risk and indicated that, if released, he will comply with any conditions imposed by the court and will reside with his mother and brother in Thornton, Illinois. At a case management conference, the trial court scheduled a hearing on defendant's Motion for November 20, 2023.

¶ 8     At the November 20, 2023, hearing, the State initially noted that it had filed a verified petition to detain. The State asserted that defendant was charged with "Class X murder," which qualifies as a detention-eligible offense. The State then stated that "the proof is evident and the presumption great that *** defendant has committed the offense of first degree murder, as this matter has also previously been indicted." As for the factual basis, the State proffered that on May 29, 2023, defendant and Mars attended a party in the parking lot of a bowling alley in Waukegan. A fight broke out and defendant provided Mars with a loaded firearm. Mars then shot the victim twice in the chest area. The victim succumbed to the wounds at a local hospital. The State argued that defendant "is a great threat to the community and no combination of pretrial factors would ensure the community's safety" because "[t]his [was] a public event with multiple individuals present where *** defendant's actions resulted in the death of another." The State therefore requested that the court enter an order detaining defendant pending trial.

¶ 9     In response, defense counsel argued that the State failed to meet its burden. Defense counsel provided some additional details regarding the events of May 29, 2023. He stated that defendant, who is blind, was driven by Mars to the bowling alley for a party. During the party, two women got into a fight. The victim and Mars, both of whom were armed, attempted to intervene. Mars and the victim got into a fight and Mars shot the victim. Defense counsel further argued that the only evidence that the State had tying defendant to the alleged crime—which evidence came from one of the women who was involved in the initial fight—was that defendant gave a gun to

Mars. According to defense counsel, however, the woman gave two conflicting statements. At one point, she stated that she heard shots while she was on the ground during the fight. At another point, she stated that defendant gave the gun to Mars, who then shot the victim. Defense counsel also asserted that another person claimed that defendant gave Mars the gun two days before the incident at the bowling alley. Defense counsel acknowledged that defendant "had some altercation two days before with some relative of the [victim] and then said that he was angry at the [victim]." But, he argued, since the victim was already dead, there is no specific, articulable fact that defendant is a threat or danger to anyone else. Defense counsel stated that being in jail is extremely difficult for defendant because he is the victim of a shooting incident several years earlier that resulted in a brain injury and vision loss. Defense counsel said that, if released, defendant would reside with family in Thornton and would abide by any conditions imposed by the court. Defense counsel represented that defendant had "only one prior, which involved an altercation with a policeman during an arrest or something like that, but he was on probation at the time."

¶ 10    Following defense counsel's remarks, the trial court inquired if defendant was on probation on May 29, 2023. Defense counsel responded, "I am new to the case. I think he was. I think he completed his probation." The State indicated that defendant "was either just done or just finishing" probation on May 29, 2023. The court noted that defendant was sentenced to 24 months' probation on February 15, 2022. The court then stated, "[o]h, this is out of Cook. There's a Cook County case. I'm sorry. Never mind."

¶ 11    The court found that the offense with which defendant was charged to be a detainable offense. The court further found that the State had shown by specific, articulable facts that defendant, although blind, was at a party in a parking lot with a number of people, that defendant had a loaded weapon, that he gave the loaded weapon to another person, and that the other person

shot the victim who died. Based on these facts, the court concluded that the State had proven by clear and convincing evidence that (1) the proof is evident or the presumption great that defendant committed the offenses, (2) he poses a real and present threat to the safety of any person or the community, (3) there are no conditions or combination of conditions that can mitigate the real and present threat to the safety of any person, and (4) less restrictive conditions would not assure safety to the community. As such, the court ordered that defendant be detained pending trial. The court signed a preprinted order of detention, checking boxes where applicable to reflect its ruling. Thereafter, defendant filed a timely notice of appeal.

¶ 12                                    II. ANALYSIS

¶ 13      The Act amended the Code by abolishing traditional monetary bail in favor of pretrial release on personal recognizance or with conditions of release. 725 ILCS 5/110-1.5, 110-2(a) (West 2022). In Illinois, all persons charged with an offense are eligible for pretrial release. 725 ILCS 5/110-2(a), 110-6.1(e) (West 2022). Under the Code, as amended, a defendant's pretrial release may only be denied in certain statutorily limited situations (qualifying offenses). 725 ILCS 5/110-2(a), 110-6.1 (West 2022). For most of the qualifying offenses, upon filing a verified petition requesting denial of pretrial release, the State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that the defendant has committed the offense (725 ILCS 5/110-6.1(e)(1) (West 2022)), that the defendant's pretrial release poses a real and present threat to the safety of any person or persons or the community (725 ILCS 5/110-6.1(a)(1)-(7), (e)(2) (West 2022)) or a high likelihood of willful flight to avoid prosecution (725 ILCS 5/110-6.1(a)(8), (e)(3) (West 2022)), and that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or the community or the risk of defendant's willful flight from prosecution (725 ILCS 5/110-6.1(e)(3) (West 2022)).

"Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74.

¶ 14 We review a trial court's decision to detain a defendant using a two-part standard of review. We apply the manifest-weight-of-the-evidence standard to the trial court's factual determinations, including whether the proof is evident or the presumption great that a defendant has committed a qualifying offense, whether a defendant poses a threat, and whether any conditions would mitigate that threat. *People v. Trottier*, 2023 IL App (2d) 230317, ¶ 13. A finding is contrary to the manifest weight of the evidence only if a conclusion opposite that to the trial court's is clearly apparent. *In re Jose A.*, 2018 IL App (2d) 180170, ¶ 17. The ultimate decision of whether a defendant should be detained is reviewed for an abuse of discretion. *Trottier*, 2023 IL App (2d) 230317, ¶ 13. An abuse of discretion occurs only if no reasonable person could agree with the trial court. *People v. Williams*, 2022 IL App (2d) 200455, ¶ 52. Questions of law and the construction of statutes are reviewed *de novo. People v. Swan*, 2023 IL App (5th) 230766, ¶ 16.

¶ 15 On appeal, defendant raises four arguments. First, defendant argues that the State failed to meet its burden of establishing that the proof is evident and the presumption great that he committed first degree murder. Second, defendant argues that the State failed to meet its burden of proving by clear and convincing evidence that he poses a real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case. Third, he argues that the State failed to meet its burden of proving by clear and convincing evidence that no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons or the community based on the specific, articulable facts of the case. Lastly,

defendant argues that the failure to hold an "immediate" hearing on the State's Petition (see 725 ILCS 5/110-6.1(c)(2) (West 2022)) "weighs in favor of reversal."

¶ 16                                     A. Immediate Hearing

¶ 17    We first address defendant's argument that the failure to hold an "immediate" hearing on the State's Petition "weighs in favor of reversal." Section 110-6.1(c)(2) of the Code (725 ILCS 5/110-6.1(c)(2) (West 2022)) provides that upon filing a petition to detain by the State, "the court shall immediately hold a hearing on the petition unless a continuance is granted." In this case, the State's Petition was filed on September 15, 2023. The Act became effective on September 18, 2023 (see *Rowe*, 2023 IL 129248, ¶ 52 (lifting stay and setting effective date of Act as September 18, 2023)), but no hearing was held until November 20, 2023. Indeed, the State does not dispute that the hearing on its Petition—held more than two months after both the date the Petition was filed and the effective date of the Act—was not "immediate" as the statute requires.

¶ 18    Despite the State's concession, we find defendant's argument unavailing where, as here, it was defendant's motion for pretrial release which prompted the hearing which resulted in the detention order at issue. In *People v. Wetzel-Connor*, 2023 IL App (2d) 230348-U, ¶ 27, this court noted the overlapping nature of the factors to consider raised in a petition by the State for pretrial detention and a motion by a defendant for pretrial release. In that case, the court rejected a claim that counsel was ineffective for failing to move to strike a petition by the State to detain because the defendant had filed a motion for pretrial release and the proceedings would have been essentially the same regardless of whether the State had filed its petition. *Wetzel-Connor*, 2023 IL App (2d) 230348-U, ¶ 27. Likewise in this case, regardless of whether the State ever filed a petition to detain, the proceedings on defendant's motion for pretrial release would have been meaningfully the same. See *People v. Borgert*, 2023 IL App (2d) 230371-U, ¶ 19. Accordingly, we reject

defendant's argument that the failure to hold an "immediate" hearing on the State's Petition weighs in favor of reversal.

¶ 19                                                  B. Qualifying Offense

¶ 20      Next, we address defendant's claim that the State failed to meet its burden of establishing that the proof is evident or the presumption great that he committed first degree murder. As charged here, a person commits first degree murder when he or she kills a person without lawful justification and, in performing the acts which cause the death the person, (1) either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another (720 ILCS 5/9-1(a)(1) (West 2022)) or (2) knows that such acts create a strong probability of death or great bodily harm to that individual or another (720 ILCS 5/9-1(a)(2) (West 2022)). First degree murder is a qualifying offense under the Act. 725 ILCS 5/110-6.1(a)(1.5) (West 2022).

¶ 21      Defendant argues that the State failed to prove that the proof is evident or the presumption great that he committed first degree murder because it merely read into the record a paragraph describing the events of May 29, 2023, and there was no evidence as to precisely when defendant allegedly handed Mars a loaded gun. At this stage, however, the State was not required to prove the elements of the offense beyond a reasonable doubt. The statute merely requires clear and convincing evidence. 725 ILCS 5/110-6.1(e)(1) (West 2022). "Clear and convincing evidence" requires more than a preponderance of the evidence, but less than proof beyond a reasonable doubt. *People v. Horne*, 2023 IL App (2d) 230382, n.3. As noted above, evidence is "clear and convincing" if it "leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary*, 2023 IL 127712, ¶ 74.

¶ 22    The State's proffer indicated that defendant brought a loaded weapon to a party that was held in a parking lot at which numerous individuals were present and which was accessible to the public at large. At some point, defendant handed the weapon to Mars who got into a fight with and eventually shot the victim. The trial court relied on these facts to conclude that the State had proven by clear and convincing evidence that the proof is evident or the presumption great that defendant committed first degree murder. We agree with the trial court that the State has met its burden here. Defendant does not point to anything that is inherently incredible in the State's proffer. He does posit that the recited evidence could support the conclusion that Mars fired the weapon in self-defense during the fight because the victim was allegedly armed. However, this argument is best left for trial. Defendant also argues that there was no explanation offered as to how defendant was aware that giving a gun to Mars would result in first degree murder charges. But the fact that defendant merely provided a weapon to the individual who allegedly inflicted the fatal shots does not necessarily relieve him of culpability. See, *e.g.*, *People v. Marshall*, 398 Ill. 256, 262-263 (1947) (finding that the defendant, who procured a gun and participated in an unlawful assembly preceding the fatal shooting, was responsible for the act of co-defendant in killing the victim); *People v. Amigon*, 388 Ill. App. 3d 26, 33 (2009) ("[A] defendant will be found criminally liable where his or her criminal acts 'set in motion a chain of events' culminating in the victim's death"), *aff'd*, 239 Ill. 2d 71 (2010); *People v. Robinson*, 113 Ill. App. 2d 89 (1969) (abstract only) (holding that both parties who acted in concert in assault which resulted in death of victim were equally accountable for death regardless of which one inflicted fatal wound). Hence, we conclude that the trial court's finding that the State proved by clear and convincing evidence that the proof is evident or the presumption great that he committed first degree murder was not against the manifest weight of the evidence.

¶ 23                                   C. Threat

¶ 24     Defendant next argues that the trial court erred in concluding that the State proved by clear and convincing evidence that he poses a real and present threat to the safety of any person or persons in the community, based on the specific, articulable facts of the case. According to defendant, the State merely used the "alleged facts of the charged crime" as a basis to argue that he presented a threat to others. Relying principally on *People v. Stock*, 2023 IL App (1st) 231753, defendant argues this was improper.

¶ 25     Under the Code, factors that the trial court may consider in making a determination of dangerousness, *i.e.*, that the defendant poses a real and present threat to any person or the community, include, but are not limited to: (1) the nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense; (2) the history and characteristics of the defendant; (3) the identify of any person to whom the defendant is believed to pose a threat and the nature of the threat; (4) any statements made by or attributed to the defendant, together with the circumstances surrounding the statements; (5) the age and physical condition of the defendant; (6) the age and physical condition of the victim or complaining witness; (7) whether the defendant is known to possess or have access to any weapons; (8) whether at the time of the current offense or any other offense, the defendant was on probation, parole, or other form of supervised release from custody; and (9) any other factors, including those listed in section 110-5 of the Code (725 ILCS 5/110-5 (West 2022)), the court deems to have a reasonable bearing on the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior. 725 ILCS 5/110-6.1(g) (West 2022).

¶ 26     In *Stock*, the court, in addressing whether the State had proven that no less restrictive conditions of release would serve to mitigate any threat the defendant posed, found that the mere

fact that a defendant is alleged to have committed a violent crime is insufficient to establish that no less restrictive conditions of release would serve to mitigate any threat the defendant posed. *Stock*, 2023 IL App (1st) 231753, ¶ 18; see also *People v. Atterberry*, 2023 IL App (4th) 231028, ¶ 18 ("But the fact that a person is charged with a detainable offense is not enough to order detention"). Seizing upon this holding from *Stock*, defendant insists that there was no evidence beyond "the alleged facts of the charged crime" to show that he poses a real and present threat to the safety of any person or persons or the community.

¶ 27 We find defendant's argument unpersuasive. Contrary to defendant's claim, the State in this case did not rely on the mere fact that defendant was charged with first degree murder to support its position that defendant poses a threat to the safety of any person or the community. Rather, the State relied on the specific facts surrounding the offense charged. At a bare minimum, defendant's behavior, as alleged, was dangerous and shows an utter disregard for the safety of any person or persons in the community. See *Stock*, 2023 IL App (1st) 231753, ¶ 14 (holding that the State provided clear and convincing evidence that the defendant, who was charged with aggravated battery/discharge of a firearm, posed a real and present threat to the safety of any person or persons or the community where the evidence established that he needlessly discharged a firearm in his home in the presence of various individuals, including his 15-year-old daughter). Considering this record, we cannot say that the trial court's factual finding that defendant poses a real and present threat to the safety of any person or the community was against the manifest weight of the evidence.

¶ 28 D. Conditions of Release

¶ 29 Lastly, defendant contends that the trial court erred in finding that the State proved by clear and convincing evidence that there are no conditions that could mitigate the risk of his release.

Defendant's argument is twofold. First, again relying on *Stock*, 2023 IL App (1st) 231753, defendant asserts that there was no evidence beyond the crime charged to establish this element. Second, defendant asserts that the error was compounded because the trial court failed to either orally enunciate or enter a written finding as to why less restrictive conditions would not avoid a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case.

¶ 30     Section 110-6.1(e)(3) of the Code (725 ILCS 5/110-6.1(e)(3) (West 2022)) directs a court to consider the conditions set forth in section 110-10. (725 ILCS 5/110-10 (West 2022)). Section 110-10(a) requires all defendants released under the Act to appear for court dates, obey court orders, refrain from committing further offenses, and surrender all firearms. 725 ILCS 5/110-10(a) (West 2022). In addition, a court may impose additional conditions, including the supervision of Pretrial Services or a similar agency, and compliance with any other reasonable condition. 725 ILCS 5/110-10(b) (West 2022).

¶ 31     We observe that the trial court's written findings on this issue are cursory. It signed a preprinted form that provides that "no condition or combination of conditions can mitigate the real and present threat to the safety of any person or persons for offenses listed in 725 ILCS 5/110-6.1(a)(1) through (7) OR the defendant's willful flight for offenses listed in 725 ILCS 5/110-6.1(a)(8)." The form provides no space for the trial court to explain its findings and the court did not attach an addendum doing so. In *People v. Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 19, we discussed the Act's requirement in section 110-6.1(h)(1) of a written order with a summary of the trial court's "reasons for concluding less restrictive conditions would not avoid" a threat to safety posed by defendant's release. 725 ILCS 5/110-6.1(h)(1) (West 2022). Looking at the Act as a whole, we found the purpose of that requirement was to ensure that detention decisions (1) were

based upon specific articulable facts and individualized to each defendant, (2) provided notice to the parties of the reasons for the court's decision, and (3) preserved this reasoning for appellate review. In *Andino-Acosta*, we held that in assessing the sufficiency of a trial court's findings, its written findings must be read in conjunction with its oral pronouncements. *Andino-Acosta*, 2024 IL App (2d) 230463, ¶ 19.

¶ 32    Here, while the trial court's oral pronouncement adequately addressed why defendant posed a threat to the safety of any person or persons or the community based on the specific articulable facts of the case, it is devoid of findings why any condition or combination of conditions would not mitigate the risk of his release. The court merely noted that defendant, although blind, was at a party in a parking lot with a number of people, that defendant had a loaded weapon, that he gave the loaded weapon to another person, and that the other person shot the victim who died. It then pronounced that, "[b]ased on these facts," the State had proven by clear and convincing evidence that there are no conditions or combination of conditions that can mitigate the real and present threat to the safety of any person and that less restrictive conditions would not assure safety to the community. In other words, the trial court cited nothing to explain why less restrictive conditions to detention would not avoid a real and present threat to the safety of any person or persons or the community based on the specific articulable facts of the case.

¶ 33    In short, there is no indication in the trial court's oral ruling or written order that it considered less restrictive conditions to detention, let alone did it provide an explanation of why less restrictive conditions would not mitigate the threat defendant poses. Accordingly, we vacate the trial court's detention order and remand the matter to the trial court to reconsider its decision on this element. On remand, should the trial court decide to detain defendant, it shall make individualized findings explaining why less restrictive conditions would not avoid a real and

present threat to the safety of any person or persons or the community based on the specific articulable facts of the case. We, of course, express no opinion on what the trial court's ruling should be. We merely direct the trial court to consider the possibility of less restrictive alternatives under section 110-10(b) of the Code (725 ILCS 5/110-10(b) (West 2022)) and explain why or why not such alternatives would mitigate the threat defendant poses.

¶ 34                                    IV. CONCLUSION

¶ 35     In light of the foregoing, the order of the circuit court of Lake County is vacated and this cause is remanded for further proceedings consistent with this order.

¶ 36     Vacated and remanded, with directions.